## HIGHSHEW v. KUSHTO

[No. 18,691. Filed February 7, 1956. Rehearing denied
March 22, 1956. Transfer denied May 29, 1956. Petition
to withdraw opinion denied June 13, 1956.]

586

*George Stevens, Stevens & Wampler,* of Plymouth, *Milton A. Johnson* and *Hammerschmidt & Johnson,* (of counsel) of South Bend, for appellant.

*John W. Montgomery,* of South Bend, and *Marshall F. Kizer,* of Plymouth, for appellee.

CRUMPACKER, J.—The appellee suffered personal injuries when a motorcycle which he was driving collided with a "pick-up" truck driven by the appellant on a public highway in St. Joseph County, Indiana, at 11:20 p.m. on May 15, 1952. Alleging that such collision was caused solely by the careless and negligent manner in which the appellant operated said truck at the time and place, the appellee brought this action to recover resulting damages and was awarded a verdict of $18,000 at the hands of a jury upon which verdict judgment was duly entered.

The facts most favorable to the verdict may be summarized as follows: Both the appellant, driving a "pick-up" truck, and the appellee, driving a motorcycle, were traveling north on a county highway in St. Joseph County, Indiana, known as Grape Road. Said highway is paved with a strip of "blacktop" 19 feet wide which, at the time of the accident in suit, was dry. The weather was clear and the visibility good. The collision occurred at the entrance to a private driveway leading to the appellant's home on the west side of said Grape Road. As the appellee overtook the appellant he was traveling at about 35 miles per hour and the headlight on his motorcycle was burning.

Desiring to pass he flicked said headlight and sounded his horn. The appellant thereupon drove her truck to the right or east edge of the pavement and slowed down. Believing that she did this for the purpose of letting him by the appellee moved over to the left or west side of the road and increased his speed to about 40 miles per hour preparatory to passing. At this time he was approximately 75 feet to the rear of the appellant's truck and when he reached a point 50 to 60 feet to the rear thereof the appellant, without giving any signal of her intention to change her course, turned her truck from the right side of the road and drove it directly across the appellee's path for the purpose of entering the driveway leading to her home. The appellee, in an effort to avoid the impending collision, attempted to pass behind the truck by swerving to his right but was unsuccessful and struck the left rear corner of the truck bed. Although the appellant knew there was a vehicle of some kind behind her she traveled some 300 feet immediately prior to making the turn above described without once glancing in her rearview mirror or otherwise looking back.

The appellant makes no serious contention that these facts are insufficient to sustain the jury's finding of negligence on her part but she insists that other undisputed facts and circumstances in the case compel the conclusion that the appellee's own negligence contributed proximately to bringing about the accident and therefore the verdict is contrary to law. This contention is based largely on the appellee's statement that he could turn his motorcycle from one side of the road to the other in a distance of 15 feet, and traveling at 50 miles per hour he could stop the same in 60 to 70 feet. Therefore, the argument runs, the appellee, in the exercise of reasonable care, had ample opportunity

to return to the right side of the road and pass behind the appellant's truck as at the very least he was 50 feet away when she made the left turn or, going at 40 miles per hour, as he testified he was, he could have stopped in time to have avoided the accident, neither of which courses of conduct he made any effort to follow. Confined to distance alone this argument seems plausible but it wholly omits the time element. We take judicial notice of the fact that a motorcycle going 40 miles per hour travels 60 feet in one second. If the appellee was 50 feet away when the appellant turned in front of him he had less than a second to get his foot on the brake and turn to the east side of the road. He testified he tried to do both but didn't have time. The appellant rejects the 60 feet per second formula because she says she was moving in the same direction at about 30 miles per hour but this contention is palpably fallacious as when she made a right angle turn to enter her driveway limitations as to time and space became absolute.

We think the evidence in this case clearly justified the jury in concluding that the appellant's negligence placed the appellee in a position of sudden peril. Whether he did what an ordinarily careful and prudent man would have done under the circumstances was for the jury to determine. The appellant insists, however, that negligent speed on the part of the appellee which contributed to the accident appears in the record as a matter of law. The only direct evidence on the question of the appellee's speed is his own testimony that at the time of the accident and immediately prior thereto he was not traveling in excess of 40 miles per hour. This testimony is overriden, says the appellant, by the distance her truck was moved by the collision and the extensive damage done thereto,

all of which compels the inference that the appellee was traveling at a highly dangerous and negligent rate of speed at the moment of impact. Surely the choice between the appellee's testimony and the inferences upon which the appellant relies lay with the jury and not with the court. It is only when the facts are undisputed and only a single inference can be drawn therefrom that the court can say, as a matter of law, that a certain course of conduct constitutes contributory negligence. *Newton* v. *Cecil* (1955), 125 Ind. App. 416, 124 N. E. 2d 713. We find no such situation in the present record.

The appellant next attacks the judgment on the ground that the verdict upon which it rests is excessive. The evidence most favorable to the appellee on the question of damages tends to establish that his expenses, incurred by reason of the accident, including hospital bills, loss of wages, doctor bills and nurses hire amounted to $7,057. His physical injuries consisted of a severely comminuted compound fracture of the right patella, a fracture of the left clavicle, a compound fracture of the lower left radius, a fracture of the right fifth metacarpal, a fracture of the right maxilla and lateral wall of the sinus, a fracture of the ulnar styloid, lacerations over the right eye and abrasions over most of the face and body. Convalescence was slow and extremely painful and has resulted in a permanent partial impairment in the functions of the right knee and wrist, a permanently disfigured face and a painful traumatic arthritis. The verdict is for $18,000. In order to be cause for reversal the verdict must be shown to be so excessive as to indicate that the jury acted from prejudice, partiality or corruption. *Indianapolis Railways* v. *Williams* (1945), 115 Ind. App. 383, 59 N. E. 2d 586; *Swallow Coach Lines, Inc.*

v. *Cosgrove* (1938), 214 Ind. 532, 15 N. E. 2d 92; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944. We find nothing in the record that indicates that the verdict in this case was prompted by anything but an honest desire on the part of the jury to reasonably compensate the appellee for his injuries and attendant suffering. For comparable verdicts held not to be excessive see *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812; *Chicago, etc., R. Co.* v. *Stierwalt* (1928), 87 Ind. App. 478, 153 N. E. 807, and cases cited.

Upon the voir dire examination of one Alfred Drews touching his competency to act as a juror in this cause it was established that he had bought a policy of insurance on his wife's automobile from the Inter Insurance Exchange of the Chicago Motor Club. By reason of this he was challenged for cause by the appellee and excused by the court. The appellant complains of this not on the ground that the challenge for cause was erroneously sustained but because the incident, in effect, informed the whole jury that the appellant was insured by the Inter Insurance Exchange of the Chicago Motor Club which was bound to pay any judgment that was rendered against her. If the incident above described had the effect she attributes to it her remedy was to ask the court to admonish the jury that the fact the appellant was insured should not be considered in reaching a verdict or, if she felt that such an admonition would not remedy the harm done, she should have moved that the entire panel be discharged and a new one assembled. She did neither. The law does not permit a litigant to gamble on the possibility of a favorable verdict and if disappointed ask for a reversal by reason of irregularities which could have been cured by proper action

before the verdict. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629.

At the trial the appellee offered in evidence a photograph of himself in the uniform of the United States Army taken in 1946. The appellant objected to its admission on the ground that the photograph was taken at a time too remote from the date of the accident, to-wit, six years, and for the further reason that it was an attempt to prejudice the jury in the appellee's favor by showing his military service. This objection was overruled and the photograph admitted. The appellant predicates error on this ruling for the reasons stated in the objections. The general rule has been stated by the Supreme Court as follows: "'A photograph, proved to be a true representation of the *person*, place, or thing which it purports to represent, is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description.' 23 C. J. S. Criminal Law §852, p. 51." (Our emphasis). *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79. There is evidence in the record tending to prove that the photograph accurately depicts the appellee's appearance two months prior to the accident. This we believe satisfies the rule. As to the prejudicial feature of the photograph it appears that the jury already had knowledge of the appellee's military service as he testified without objection and prior to the introduction of the photograph that he was in the United States Army Air Force during the late war.

The appellant next charges error in the action of the court in overruling her objections to certain questions asked her concerning her knowledge of the contents of the pleadings in the case. Her motion for a new trial, however, fails to recite the objec-

tions interposed and the witness' answers. We have no way of knowing whether the objections were proper or the answers harmful and thus no question is presented. *Discher* v. *Klapp* (1954), 124 Ind. App. 563, 117 N. E. 2d 753.

Of the instructions given by the court the appellant contends that numbers 3, 8, 6 and 12 are erroneous. Number 3 reads as follows:

"I further instruct you that if you find from the evidence that the plaintiff, James E. Kushto, was following the truck driven by the defendant, Gertrude C. Highshew, on Grape Road in St. Joseph County, Indiana, and that the said James E. Kushto was travelling at a reasonable distance to the rear of said truck, or was approaching said truck with the intention to pass the same, then I instruct you that the said James E. Kushto had a right to believe that the defendant, Gertrude C. Highshew, would obey the laws of the State of Indiana in regard to turning her truck from the course in which it was being driven on said highway. In other words, the said James E. Kushto had the right to assume that the defendant, Gertrude C. Highshew, would not suddenly turn her truck from the course in which it was being driven without first giving the signals required by law of her intention so to do."

It is asserted that the last sentence of this instruction placed an absolute duty on the appellant to give a turn signal even though the appellee were so far in the rear as not to be affected thereby if he was exercising ordinary care for his own safety. It will be noted, however, that the portion of the instruction complained of is predicated upon a finding that the appellee was a reasonable distance in the rear when the appellant made the turn which, we think, forecloses the idea that the appellee might have been so far behind as to make a turn signal serve no purpose. Furthermore the jury

was properly and adequately instructed as to the appellant's duty to give a turn signal, the circumstances under which such signal is required and the manner in which it is to be given, by the appellee's tendered instructions numbered 6 and 7 which the court gave. When these three instructions were read together it is obvious that the jury could not have been misled by the instruction complained of.

The next instruction charged to be erroneous is number 8 which reads as follows:

"I instruct you that the plaintiff has charged the defendant with several acts of negligence. I further instruct you that it is not necessary for the plaintiff to prove each and every charge of negligence alleged, but if he has proven any one by a fair preponderance of the evidence, and that such act of negligence so proven was the proximate cause of the collision resulting in his injuries and that the evidence had failed to show that the plaintiff was guilty of contributory negligence, then the plaintiff would be entitled to recover in this case and your verdict should be for the plaintiff."

After the most careful scrutiny we are unable to find anything wrong with this instruction. The appellant's contention seems to be that it permits a recovery upon a charge of negligence concerning which she claims there is no evidence. After being fully and properly instructed as to the burden of proof and the consequence of a failure to sustain it, it is inconceivable that an intelligent juror could be led by this instruction into finding for the appellee on an issue concerning which there is no evidence.

It is charged that instructions 6 and 12 each mandate the jury to find for the appellee if it finds certain things to be the fact but wholly omits the necessity of a further finding that the appellee was free from contributory negligence. Unquestion-

ably it is the law that where a court gives an instruction which purports to enumerate the elements essential to recovery and directs a verdict if such facts are found, the omission of a fact essential to recovery renders the instruction erroneous and it cannot be cured by other instructions. *Allen* v. *Grabert* (1953), 123 Ind. App. 649, 111 N. E. 2d 477. It is true that instructions numbered 6 and 12 are of the character just described and that each of them fails to specifically enumerate freedom from contributory negligence as a necessary element to recovery. It will be noted however that each of said instructions concludes with the statement: "If you find such negligence was the *sole* proximate cause of the collision in question the verdict should be for the plaintiff." (Our emphasis). In *Gerow* v. *Hawkins* (1934), 99 Ind. App. 352, 192 N. E. 713, an instruction to find for the plaintiff if the defendant's negligence was the "sole" proximate cause of the injury, was held to sufficiently negative contributory negligence since, under the instruction, there could be no contributory negligence as an additional proximate cause. We find no error in instructions numbered 6 and 12.

The refusal of the court to give appellant's tendered instruction number 27 presents a question of first impression in Indiana. If given it would have informed the jury that in the event they found for the plaintiff any award made to him would not be subject to federal income taxes. Such an instruction has been approved by the courts of Missouri, *Dempsey* v. *Thompson* (1952), 363 Mo. 339, 251 S. W. 2d 42, and we can find no reason for the disapproval of the one here involved. It is obvious, however, that a refusal to give the instruction could only result in an excessive verdict due to the jury's desire to make the appellee whole after taxes. The verdict in this case

is not excessive and we are constrained to conclude that any error involved in the refusal to give the instruction in question was harmless.

The appellant's tendered instruction number 18 was also refused by the court. It dealt with the appellee's duty to exercise ordinary care for his own safety and enumerated various things and circumstances the jury might consider in determining whether or not the appellee had exercised such care. We find nothing wrong with the instruction but presume that it was refused because its entire subject matter was fully covered by appellant's tendered instructions numbered 8, 9, 10, 14, 16 and 17, all of which were given. We see no error in the court's refusal to give appellant's tendered instruction number 18. The same thing may be said of appellant's tendered instruction number 21 which the court also refused. Its entire subject matter was fully and accurately covered by appellant's tendered instructions numbered 16, 17 and 22 which the court gave.

The appellant next urges error in the court's refusal to give her tendered instruction number 20. This instruction sets out the Indiana statute defining reckless driving and concludes with these words: "If you find from a fair preponderance of the evidence that the plaintiff failed to observe the provisions of said statute, then you would be justified in finding him guilty of *contributory negligence* and if you find that such contributory negligence was a proximate cause of his injuries, then your verdict must be for the defendant." (Our emphasis). While we see no great harm resulting had the instruction been given it is nevertheless a careless and inaccurate statement of the law. It is fundamental that the violation of a statute by a plaintiff is not contributory negligence

unless such violation helps to bring about his injuries. Because of the instruction's inaccuracy of expression we think the court was justified in refusing it. Appellant's tendered instruction number 23, which she contends should have been given but was refused, sets out the statute defining unlawful speed upon public highways in the state and concludes in language identical with that quoted above in connection with instruction number 20. Its refusal was proper for the same reason. Furthermore the appellant was in no sense harmed by its refusal as her instruction number 30 which the court gave sets out the speed statute and told the jury that if it found that the plaintiff violated said statute such violation would constitute *prima facie* negligence on his part and by instruction number 18 the jury was told that negligence on the part of the plaintiff which contributes or helps to bring about his injuries bars recovery.

Finding no error the judgment is affirmed.

## ON PETITION FOR REHEARING

CRUMPACKER, J.—In our initial opinion, filed February 7, 1956, we made the following comment.

"Upon the voir dire examination of one Alfred Drews touching his competency to act as a juror in this cause it was established that he had bought a policy of insurance on his wife's automobile from the Inter Insurance Exchange of the Chicago Motor Club. By reason of this he was challenged for cause by the appellee and excused by the court. The appellant complains of this not on the ground that the challenge for cause was erroneously sustained but because the incident, in effect, informed the whole jury that the appellant was insured by the Inter Insurance Exchange of the Chicago Motor Club which was bound to pay any judgment that was rendered against her."

The appellant contends that this is a misstatement of the record in that she charged error in sustaining the challenge of the juror Drews independent of the effect of the incident on the jury as a whole and our opinion fails to decide that question. We were led to the remarks above quoted by the following statement in the appellant's brief:

> "Appellee stated as grounds for challenge for cause that Juror Drews had bought a policy of insurance for his wife with the Inter-Insurance Exchange and offered to prove that his wife had such policy, and the court, thereupon, excused him. We are attacking the challenge for cause because it tells the jury that appellant was insured. We do not question the right to make the interrogation. It is for the purpose of exercising preemptory challenges. *Beyer* v. *Safron,* (1926), 84 App. 512, 151 N. E. 620. There is no question that telling the jury that such company was making the defense constitutes error. *Inland Steel Co.* v. *Gillespie,* (1914), 181 Ind. 633, 104 N. E. 76. What difference is there between the situation in the case at bar? The court's excusing for such cause was in effect telling the entire panel that this company was making the defense."

Upon further examination of the record we find that Specification 5 (a) of the appellant's motion for a new trial is as follows: "The court erred in excusing Alfred Drews for cause, the said cause being that the said Alfred Drews had bought a certain policy or his wife had bought a certain policy of insurance with the Chicago Motor Club, Inter-Exchange Insurance Company." The assignment of errors is "The court erred in overruling the appellant's motion for a new trial." We concede that this presents a question our initial opinion did not decide due to the fact that the only argument the appellant made in its behalf is the following statement without the citation of any authority to sustain it

"There is no case that holds that the mere owning of a policy in a specific insurance company is sufficient interest to give rise to a challenge for cause. The challenge being sustained was not only erroneous, but the making of the challenge was error in itself."

In Indiana the rule is clear that if a challenge of a juror for a cause which does not render him incompetent is sustained and an impartial jury is secured, the cause will not be reversed. *Carpenter* v. *Dame and Others* (1858), 10 Ind. 125: *Heaston* v. *The Cincinnati and Fort Wayne Railroad Company* (1861), 16 Ind. 275. No litigant has the right to have any particular individual sit on the jury even if qualified as his right is one of rejection and not selection and if he is eventually tendered a fair and impartial jury to try his case that is all to which he is entitled. We find nothing in the record that suggests that the jury to which this case was tried was not fair and impartial.

Other questions urged by the appellant in her petition for a rehearing are merely the reassertion of contentions originally made and we find no reason to change our views as heretofore expressed concerning them.

Petition denied.

NOTE.—Reported in 131 N. E. 2d 652. Rehearing denied 133, N. E. 2d 76. Transfer denied 134 N. E. 2d 555.